No. 12,228.

NORDLANDER *v.* WOOD ET AL.

(2 P. [2d] 1084)

Decided August 3, 1931.

Mr. GEO. B. CAMPBELL, Mr. O. L. CAPPS, for plaintiff in error.

No appearance for defendants in error.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

ANNA M. Nordlander sued Nellie C. Russell and several tenants to recover possession of certain real property in Denver, and for damages for its detention. Before the trial John P. Moody, the A B C Realty Company, and Edward S. Ballenger were made defendants, and Minnie B. Wood was substituted for Nellie C. Russell as a defendant. Judgment went against the plaintiff, and she is here seeking a reversal thereof.

Ballenger, a resident of California, was the owner of the Denver property. On August 30, 1923, he contracted

to sell it to Miles Fitzgerald and Olive Fitzgerald on monthly installments of $50 each. The contract provided that in case the Fitzgeralds failed to make any of the payments, Ballenger, at his election, might terminate the contract by giving thirty days' notice of his intention so to do.

On August 6, 1924, the Fitzgeralds were about eight months behind in their payments. To arrange some adjustment, they and Ballenger, who was in Denver on a visit, called at the office of John P. Moody, who was engaged in the real estate business under the name of A. B C Realty Company. The Fitzgeralds had listed their interest in the contract with Moody for sale, hoping that by a sale they would receive an amount sufficient to discharge their indebtedness to Ballenger, but no sale had been made. On August 7 Ballenger left Denver. Before going he appointed Moody his agent to attend to the matter for him, giving him the following instructions: ''In the Ballenger-Fitzgerald sale adjustment, the instructions of Mr. Ballenger are that Mr. Fitzgerald may pay $100.00 on contract of sale and purchase amounting to $2,346.00 and interest, and may thereafter pay $50.00 per month, including interest, as heretofore (this $100.00 payment to be made within the 30 day notice of forfeiture period) with the understanding that this contract will then be not delinquent, and that these payments, $50.00 per month, including interest, will be counted as though the payments had been made promptly and regularly. However, delinquent interest shall be added, amounting to $109.98, to August 30th, 1924. If this payment is not made, the A B C Co. is authorized to accept during the period of notice for forfeiture, assignment of contract of sale and purchase and full possession of the premises, and to cancel liability of Fitzgerald. Or if Fitzgerald makes payment of $50.00 either before or after Ballenger's departure, and signs with his wife, chattel mortgage for $50.00, upon terms agreed upon, the A B C Co. is authorized to permit monthly payments as stated

above, and is authorized to collect chattel mortgage, or foreclose if necessary. (J. P. Moody is to charge Ballenger $15.00 if Fitzgerald does not pay and he, J. P. M., can talk Fitzgerald into giving up without foreclosure.)'' Ballenger testified that he also told Moody ''that if Mr. Fitzgerald showed any inclination or effort to make good, to give him every chance possible.''

On August 29 Moody wrote to Ballenger as follows: ''Mr. Fitzgerald has not paid a single penny. His wife has not come in and signed the mortgage. I have made personal trips out there, myself; have served notice on him and am now trying to do something with them or for them, to permit them to sell their contract equity, and still have hopes, but it looks as though we would have to go into a foreclosure. I am very sorry. I really thought that perhaps he would try to pay up, but I guess the encumbrance is so large that he does not feel it worth while to attempt to buy the property.'' Ballenger answered this letter on September 8, stating that he did not think it wise to ''dally'' any more with Fitzgerald; instructing Moody to go ahead and do whatever Moody thought the circumstances demanded, and to put the place on the market; informing Moody that Ballenger, over a month before, had served notice on Fitzgerald that the contract was forfeited, so that Moody could get him out at any time; and directing Moody to collect back rent from Fitzgerald, even by garnishment, if necessary. ''But,'' he added, ''do just as you think best.'' Moody answered this letter on September 11. Among other things, he said: ''We have served regular notice on Mr. Fitzgerald, as you requested, * * * We have been in hopes of finding something we could deal him and get him out, and also we are in hopes to get someone to take over his contract. We have not yet given up hope of this, and if we can possibly do so, we shall settle the matter in that way, as you instructed on leaving.'' On September 22 Ballenger wrote to Moody, saying, among other things: ''I am very well satisfied with the way you are handling the

matter. I think we have no reason to deal leniently with Fitzgerald. * * * You are on the ground and know best what to do.''

It appears, therefore, that Ballenger knew that the Fitzgeralds had listed their interest with Moody for sale, and that the Fitzgeralds had failed to make the payments as required, and that the contract was subject to forfeiture by Ballenger, and that notice of forfeiture had been given, and that notwithstanding such default, Moody was still trying to find some one to purchase the contract from the Fitzgeralds. It appears, also, that Ballenger was ''very well satisfied with the way'' Moody ''was handling the matter.''

If, in his subsequent relations with Ballenger, Moody had been frank, and had given the information that it was his duty, as agent, to give to his principal, this litigation, no doubt, would have been avoided.

On September 22, 1924, there was executed an assignment by the Fitzgeralds to Nellie C. Russell of their contract of purchase, and a certificate of acknowledgment thereof signed by Moody as notary public. No intimation of this transaction was given to Ballenger, and Mrs. Russell's name was not mentioned to him, until April 6, 1925, when Moody wrote that ''Mrs. Russell wishes to apologize for not paying this before,'' referring to installments for two months. Ballenger had written repeatedly for information. He wanted to know whether the checks sent him by Moody were for rent, or on account of the contract, and who made the payments. He repeatedly demanded a statement of the account. To all these questions and to this demand, Moody made either evasive answers or no answer at all. Moody's remittances were by checks. On the face of each check was printed: ''This check is issued by A B C Realty Co. * * * and is received by endorser as full payment of . . . . . . . .'' On the several checks were written, following the words quoted above, ''collection 101 Cook street,'' December and January payments on 101 Cook St.,'' ''payment on

contract 101 Cook St. bal. due Dec. 1 $2344.07 including interest,'' and other words of similar import.   Ballenger testified that these writings were not on the checks when they were received, but there is nothing suspicious in the appearance of the checks, and the general finding of the trial court settles the question adversely to Ballenger's contention.   Some of the checks were cashed and others were not.

Failing to receive the information requested by him, and claiming that the contract had been terminated, and refusing to recognize the transfer to Mrs. Russell, Ballenger, on June 5, 1925, conveyed the property to Anna M. Nordlander, who, on August 12, 1925, commenced this suit.   On September 1, 1925, Nellie C. Russell sold and transferred her interest in the property to Minnie B. Wood.

Counsel for the plaintiff contend that Nellie C. Russell and Minnie B. Wood, to use counsel's expression, were mere ''stool pigeons'' used by Moody to accomplish the fraudulent purpose of obtaining the property for himself; that Minnie B. Wood, if not a ''stool pigeon,'' was a myth; that her name on the contract between Mrs. Russell and herself was a forgery; that the assignment by the Fitzgeralds did not have the name of any person as assignee when it was executed by the Fitzgeralds; that the Fitzgeralds supposed they were assigning the contract to Ballenger; that they never acknowledged the assignment, as certified by Moody; and that the name of Nellie C. Russell was inserted later and without their authority.   This contention had some evidence to support it, but there also was evidence to support the general finding of the trial court against the plaintiff, which finding necessarily negatived her contention above set forth. The finding of the trial court cannot be disturbed.

The judgment is affirmed.

MR. JUSTICE CAMPBELL, MR. JUSTICE HILLIARD and MR. JUSTICE ALTER concur.